## THE RONALD J. BROWN.

(District Court, E. D. New York. March 22, 1921.)

1. **Salvage** ⊂⇒31—**Difference between value after raising and cost of raising held not salved value.**

   Where the owner of a derrick barge had breached his contract with the charterer to keep the barge insured, and as a result of attempts to extinguish a fire in the cargo of the barge she was sunk, the cost of raising the barge and repairing her, which would have been paid by the insurers if the owner had performed his contract, is not to be deducted from the value of the barge after repairs in determining the value of the salved vessel.

2. **Salvage** ⊂⇒31—**Value of cargo must be considered, though not seized on libel.**

   In determining the amount of salvage to be allowed tugs for aiding in extinguishing a fire on a barge, the value of those services to the cargo of the barge must be considered, though none of the cargo was seized by the marshal or was subject to the decree of the court.

3. **Salvage** ⊂⇒31—**Tugs allowed $250 for assistance to barge on fire.**

   On a libel for salvage services rendered by two tugs to a barge, which took fire in New York Harbor, and which was subsequently taken in charge by the fire department, and sank as a result of the water pumped

into it, the tugs *held* entitled to an allowance of $250 as the reasonable value of their services to the barge itself, exclusive of such value to the cargo, which was not seized in the proceedings.

In Admiralty. Libel by the Tice Towing Company against the derrick barge Ronald J. Brown, to recover claims for salvage services rendered by two tugs owned by the claimant. Decree rendered, allowing claimant $250.

Park & Mattison, of New York City, for libelant.
Walter Jeffreys Carlin, of New York City, for respondent.

CHATFIELD, District Judge. The libelant, owner of the tugs George S. Tice and Louise Rugge, claims salvage for services rendered to the lighter Ronald J. Brown, which on the morning of the 24th of April, 1920, had been taken from Pier 32, Brooklyn, by the George S. Tice to be placed in a tow which was then to proceed to Elizabethport, N. J. After leaving the pier, and when off Governors Island, fire was discovered in the cargo of rags by the captain of the Brown, who signaled to the Tice, which, in turn, summoned the Louise Rugge, which was then making up the tow further down the bay. The Tice got a stream of water upon the barge through a small hose, but was unable to reach the seat of the fire, and after some trouble in getting a nozzle upon the hose was joined by the Louise Rugge, which went down alongside of the Brown and played water upon the burning bales of rags until the arrival of a fireboat from the Battery. This fireboat had been summoned by a passenger from a Staten Island ferryboat, who saw the fire on a trip up the bay. Shortly afterwards the fireboat Gaynor also came from Thirty-Eighth street, Brooklyn, where a fireman had discovered the burning lighter and had given the alarm. Three other tugs had, in the meantime, been attracted to the scene and had begun to render assistance, or were getting ready to put water upon the fire, when the deputy chief of the fire department upon the New Yorker directed them to cease their efforts and get out of the way. They all obeyed and left, except the Tice, which continued to tow the Brown on a short hawser, but at the suggestion of the fire chief took her to a pier near the fireboat station at Thirty-Eighth street, Brooklyn, in order to get the cargo of rags off the boat, so as to get to the fire. The Tice then left, and the firemen, with the aid of a hook and ladder company, threw off some of the bales upon the wharf and continued to pour water onto the fire until the wet load of rags and the water accumulating in the hold caused the Brown to dump her load, and ultimately to sink close alongside the wharf.

It appears that the Brown was owned by a Mrs. Waller, who had received the boat as a gift from her mother-in-law some five months previously. Mrs. Waller, in turn, had turned over the boat under an oral charter to the Waller Lighterage Company, which proves to be a trade-name under which Mrs. Waller herself was doing business and which was managed by her husband. The Waller Lighterage Company chartered the Brown to the Barrett Manufacturing Company, which was transporting the cargo of rags at the time of the fire. The cargo of rags appears to have been insured. There was no insurance

upon the Brown, although the Barrett Manufacturing Company contends that the Waller Lighterage Company had agreed to keep the boat insured.

The Tice Towing line filed its libel promptly, on the 3d of May, or 10 days after the fire. Mrs. Waller, on the 24th day of May, answered the libel, and filed a stipulation of $1,500 for the lighter. The Barrett Manufacturing Company did nothing to raise the lighter, and some time in June Mr. Waller, as manager for his wife, undertook to remove the cargo of rags from the boat, in order that the lighter, when relieved of the cargo of rags, might float sufficiently to be towed into shallow water and pumped out. Those efforts were unsuccessful, and after several days' work slings were swung from another derrick lighter. The Brown was taken to the shore near Bath Beach, where, by degrees, she was relieved of her cargo at low tide, and ultimately raised. Her injuries from the fire consisted of slight scorching of the boom and mast, and of the loss of the deckhouse, a light structure, which floated away while the boat was under water. The Waller Lighterage Company expended $1,690 in removing cargo and raising the boat, which, after raising, was valued by a professional surveyor at $1,800. It is apparent that, if the stipulation for value had not been given some weeks previously the claimant would have sought to reduce the amount of her stipulation. The portion of the cargo unloaded upon the dock by the firemen was not seized by the marshal under the process issued in this case, although the libel was filed against the boat and her cargo, because at the time the libel was served none of the cargo could be located by the marshal, and there has been no testimony introduced to show what the Barrett Manufacturing Company did with those rags. The balance of the cargo was under water when the marshal levied his process, and after being unloaded from the boat by the claimant was offered for sale. No satisfactory bid was obtained, and after some effort this part of the cargo was disposed of for $245, which, according to the testimony, was returned by the auctioneers to the claimant.

It appears that the claimant has made a demand upon the Barrett Manufacturing Company for payment of the expense of raising the boat and for charter hire. Against this claim the Barrett Manufacturing Company has asserted a counterclaim for the damages because of the alleged breach of contract by the claimant in failing to keep the boat insured. The money realized from the rags has been left in the hands of the claimant, because these conflicting demands have not been determined, and, as the libelant has not levied any process against or sought to pursue the proceeds from the rags, no salvage can be awarded against the cargo, although the services rendered to the cargo must be taken account of in fixing the value of the salvage services. It appears that the three boats, who joined the Tice and the Rugge in assisting the Brown, also filed salvage claims. The cases arising from those claims were consolidated with the claims of the Rugge and the Tice, but the claimant has made some settlement with the owners of those three tugs, and their libels have been discontinued, or are not now presented for hearing.

[1, 2] The most serious question presented by the case arises from the contention of the claimant that inasmuch as she, under the guise of the Waller Lighterage Company, expended $1,690 in raising her own boat, and as it appears that the boat, after raising, was worth but $1,800, the value of the salved vessel is but $110. Against this amount the claimant contends that the services of the three tugs, who have been settled with, as well as the Tice and the Rugge, must be set off, and that the share of the services rendered by the fire department must also be taken into account. If process had been served upon the cargo, or any funds representing that portion of the cargo which was saved, this would have some bearing in fixing the salvage award, and must in any event be taken into account in determining what award should be made to the Tice and the Rugge.

The contention of the claimant is plausible upon its face; but upon careful analysis it appears that the result reached by the claimant is incorrect. If the Waller Lighterage Company had lived up to the alleged agreement with the Barrett Manufacturing Company, the Brown would have been insured. The insurance company then would have been interested in raising the boat, in order to reduce their loss, and whatever expense there was connected with raising the boat would have been repaid by the insurance company to the Barrett Manufacturing Company, who, in turn, would have turned the boat back in proper condition to the Waller Lighterage Company and paid charter hire. The Barrett Manufacturing Company would then not have denied responsibility for the boat because of the alleged breach of contract by the Waller Lighterage Company. Damages suffered by this breach of contract are not chargeable against the value of the boat. As salved, the boat represents a value of $1,800, in addition to the value of the cargo which was saved, but which has not been brought into the present action.

[3] Taking into account the services of the fire department and of the other tugs, it would seem that an award of $250 for the Tice and the Rugge would represent the services which they rendered, and which are properly chargeable against the boat. Of this the Tice should have $175 and the Rugge $75, and the award should be divided in the proportion of two-thirds to the owner and one-third to the crew of each boat.